NELSON P. COHEN
United States Attorney

RETTA-RAE RANDALL
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: rettarae.randall@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>VALERIE ROSE UNGER,<br><br>    Defendant. | No. 3:06- cr-0065-RRB<br><br><u>GOVERNMENT'S NOTICE<br>AND MOTION IN LIMINE<br>PURSUANT TO FED. R. EVID<br>404(b)</u> |

The United States of America, through undersigned counsel, respectfully files this memorandum in support of the admissibility of evidence under Fed. R. Evid. 404(b). Evidence of another act is admissible because it is offered to prove defendant Valerie Rose Unger's ("Unger's") motive, opportunity, intent, plan, knowledge and absence of mistake or accident.  More specifically, the evidence helps prove that

Unger, against whom the specific other act evidence is offered, knowingly uttered and possessed with intent to deceive a counterfeit security as charged in the Indictment.

## FACTUAL BACKGROUND

Unger is presently charged by Indictment with a violation of Title 18 U.S.C. §513(a), in that between on or about May 31, 2006, and on or about June 2, 2006, she did knowingly utter and possess a counterfeit security, namely, a $150,000.00 check made payable to "Valerie Unger". The counterfeit check was of the Supreme Tooling Group, an organization, as that term is defined in 18 U.S.C. § 513(c)(4). Unger uttered and possessed the counterfeit check with the intent to deceive another organization, namely, Money Mart. Supreme Tooling Group is a subsidiary of ABC Group in Toronto, Ontario, and operates in foreign commerce. Money Mart is an organization which operates in interstate commerce.

Specifically, on May 31, 2006, Valerie Rose Unger ("Unger") inquired of Money Mart at 704 E. Benson Blvd. in Anchorage, AK, how large of a check they could cash, explaining that she had a check for $150,000.00. She was told that the store would cash the check once it had been verified. Later that day, Unger returned to the store, with the check - Cheque No. 67917, dated May 22, 2006, drawn on Canada Trust of Rexdale, Ontario, from Supreme Tooling Group of Toronto, Ontario,

and made payable to Valerie Unger, 5740 Rocky Mountain Court, Anchorage, AK 99504, USA.  Unger told the store employee that she had sold a patent to get the money.  The store employee made a photocopy of the check and verified Unger's identity by her Alaska ID card.  Unger was told that the store would need a day to get the money from a bank since they did not keep that amount in-house.

The store employee verified with ABC Group (the parent company of Supreme Tooling Group) that the check was fraudulent and Canada Trust stated that the account number was invalid.  On June 1, 2006, Unger was asked to bring the check to Money Mart with the letter which had accompanied the check.  The letter with the check, dated May 22, 2005, purported to be from a Frank Adams, Financial Broker and Consultant, Vaseta Financial Brokers.  It states in part, "We are being paid 7.99% of the principal amount; this amount is due upon completion of each transaction, therefore it is paramount that we (Vaseta Financial Brokers and Investment Company) and Bearer of the Draft/Cheque is in constant communication regarding this transaction until it is completed."

Unger came to Money Mart with the check, letter, and a large duffel bag, traveling in a tan Ford Expedition occupied by a number of people.  Unger was told that the money was not yet available and to return at 9:00 the next morning.  Later

that day, Unger called and asked to have the money transferred via a wire transfer instead of picking up cash; she had a male friend call Money Mart with the information needed to wire the money into his bank account. Unger and her friend placed many calls to Money Mart that day.

On June 2, 2006, at approximately 9:15 a.m. Unger arrived at Money Mart and was questioned by an Anchorage Police Department Detective who was introduced to Unger as the owner of Money Mart. When asked about the check, Unger claimed that the money was payment for an art portfolio with three drawings. When Unger's friend attempted to flee, they were arrested.

When interviewed after her arrest and after waiving her Miranda Rights, Unger claimed that she had received the check through the mail and thought it was payment for a patent she had sent to another company six months earlier.

In an abundance of caution, the United States hereby gives notice of its intent to offer the following evidence which might be considered uncharged misconduct under Rule 404(b). See United States v. Serang, 156 F.3d 910, 915 (9th Cir. 1998); United States v. Souliman, 813 F.2d 277, 279 (9th Cir. 1987). The defendant has been provided with all discovery pertaining to Rule 404(b) evidence.

On or about May 5, 2006, Unger attempted to deposit a cashiers check drawn on Eastern Financial Florida Credit Union (EFFCU) for $25,950.00 into her bank account with Denali Alaskan Federal Credit Union (DAFCU). This deposit came to the attention of bank management because of previous dealings with Unger - on May 12, 2005, Unger had been reported to the Anchorage Police Department for negotiating stolen checks through this same bank account. Unger still owed $2800 to DAFCU for the amount paid to her on the stolen checks and associated fees.

The check for $25,950 was accepted by the DAFCU branch involved and a hold was placed on the funds due to Unger's account history. Unger called DAFCU and demanded that the hold be removed; she called several times over the next several days asking for release of the hold. EFFCU confirmed that the check was counterfeit and Unger was so informed. Unger requested that the check be returned to her so she could take it to Florida and cash it; her request was denied. She was informed that the check would be given to the FBI.

## ARGUMENT

**A.     <u>The Proposed Other Acts Evidence is Admissible Under Rule 404(b)</u>**

Rule 404(b) provides in part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in

> order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of **motive**, **opportunity**, **intent**, **preparation**, **plan**, **knowledge,** identity, or **absence of mistake or accident**. . . .

The Ninth Circuit has held that Rule 404(b) is an inclusionary rule under which evidence is admissible "except where it tends to prove only criminal disposition." United States v. Rocha, 553 F.2d 615, 616 (9th Cir. 1977)(emphasis in original); United States v. Castillo, 181 F.3d 1129, 1134 (9th Cir. 1999); United States v. Rrapi, 175 F.3d 742, 748 (9th Cir. 1999); United States v. Jackson, 84 F.3d 1154, 1157 (9th Cir. 1996); United States v. Meling, 47 F.3d 1546, 1557 (9th Cir. 1995); United States v. Ayers, 924 F.2d 1468, 1472-73 (9th Cir. 1991); United States v. Diggs, 649 F.2d 731, 737 (9th Cir. 1981). The decision whether to admit 404(b) evidence is committed to the district court's discretion, and is reviewed only for abuse of that discretion. United States v. Sitton, 968 F.2d 947, 958 (9th Cir. 1992).

The specific intent, actions, and state of mind of Unger will be the central issue in this case. Unger's knowledge and intent therefore, are material issues "simply because the government had to prove them." United States v. Mayans, 17 F.3d 1174, 1182 (9th Cir. 1993). To prove uttering and possessing a counterfeited security in violation of 18 U.S.C. §513(a), the government must prove: (1) the defendant did

utter or possess a counterfeited security of an organization; (2) the defendant uttered or possessed the counterfeit security with the intent to deceive another organization. The term "counterfeit" means a document that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety. 18 U.S.C. §512(c)(1). The term "security", means among other things, a check. 18 U.S.C. §512(c)(3)(A). The term "organization" means a legal entity, other than a government, established or organized for any purpose, and includes a corporation, company, association, firm, partnership, joint stock company, foundation, institution, society, union, or any other association of persons which operates in or the activities of which affect interstate or foreign commerce. 18 U.S.C. §512(c)(4).

The Ninth Circuit has set out a four-part test for analyzing the admissibility of 404(b) evidence introduced to show motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident. Evidence is admissible under that test when: (a) sufficient proof exists for the jury to find that the defendant committed the other acts; (b) the other acts are offered to prove a material issue in the case; (c) the other acts were not too remote in time; and (d) the other acts are sufficiently similar to the charged conduct. United States v. Bracy, 67 F.3d 1421, 1432 (9th Cir. 1995), (citing United States v. DeSalvo, 41 F.3d 505, 509 (9th Cir. 1994)).

The United States' proffered other act evidence is admissible under the Ninth Circuit test.

1. Sufficient Evidence Proves that the Other Acts Occurred

Other acts evidence is admissible if a jury could find it to be true by a preponderance of the evidence. See Huddleston v. United States, 485 U.S. 681, 690 (1988). Employees of DAFCU will be available to testify, and the counterfeit check - Cashiers Check number 694995319, dated 04/24/06 in the amount of $25,950.00, payable to and endorsed by Unger - is in evidence, and a copy has been disclosed to the defense.

This direct testimony and documentary evidence regarding the proposed other act is significantly more than the "unsubstantiated innuendo" that the Supreme Court was concerned about in Huddleston. 485 U.S. at 689.

2. The Other Acts Evidence is Offered to Prove a Material Point in the Case–The Defendant's Intent and Knowledge

The defendant in this case is charged with uttering and possessing a counterfeit security, namely, a $150,000.00 check made payable to "Valerie Unger". Unger possessed the counterfeit check which was drawn on an organization which operated in foreign commerce, with the intent to deceive another organization which operated in interstate commerce.

"Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from that conduct." Huddleston, 485 U.S. at 687. The reasoning is that the government must affirmatively prove by direct evidence that the defendant intended the consequences of her actions. See, e.g., United States v. Gruttaduro, 818 F.2d 1323, 1327-28 (7th Cir. 1987). Furthermore, where specific intent is an element of the offense that the United States must prove, the United States may introduce Rule 404(b) evidence in its case-in-chief to prove intent regardless of whether the defendant plans to make an issue of intent. United States v. Spillone, 879 F.2d 514, 518 (9th Cir. 1989)(evidence of prior conviction properly admitted on issue of intent despite defendant's promise not to argue it). Motive is evidence of the commission of any crime. United States v. Bradshaw, 690 F.2d 704 (9th Cir. 1982).

When the government's theory is one of intent or knowledge, it must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act. See, United States v. Mayans, 17 F.3d 1174 (9th Cir. 1994). Unger may argue that she believed the check for $150,000 to be genuine because she had sold "some ideas in an art portfolio" or some

patents to some invention company. The evidence from the prior act will clearly show knowledge and her intent to deceive. She attempted to cash a counterfeit out-of-state cashier's check for $25,950.00, by depositing it in her bank account to see if it would clear. She was notified at that time that the check was counterfeit, and that it was going to be turned over to the FBI; she demanded return of the check to her purportedly take it to the credit union in Florida and cash it there. Less than 30 days later, she is in possession of another counterfeit check of a larger amount, and utters it to Money Mart for cashing. Her manner of committing the same crime a second time proves her intent to defraud, and negates any claim of mistake, misunderstanding, or negligence on her part.

    3.    Proposed Other Acts Evidence Are Not Too Remote in Time

In other cases, the Ninth Circuit has approved spans of several years between the other acts and the charged offense. See United States v. Spillone, 879 F.2d 514, 519 (9th Cir. 1989) (citing numerous cases admitting prior acts that are ten years or older); United States v. Ross, 886 F.2d 264, 267 (9th Cir. 1989) (admission of improper use of social security number which occurred 13 years before the charged offense). Remoteness in time is not at issue here. The incident charged in the

Indictment occurred on or about May 31, 2006; the prior act occurred on May 5, 2006.

    4.    **The Proposed Other Acts Are Sufficiently Similar to the Charged Offenses**

The proposed other act evidence is sufficiently similar to the charged offense to warrant its admission in this case. In fact, the offenses are almost identical, but for the victims and the amount of the counterfeit checks being uttered and possessed with intent to deceive.

**B.    The Probative Value of the Evidence Far Exceeds the Danger of Unfair Prejudice to the Defendant.**

Pursuant to Federal Rule of Evidence 403, the court can exclude other acts evidence on the ground that the probative value is substantially outweighed by the danger of unfair prejudice, as part of the standard inquiry common to all the Court's evidentiary decisions. However, the evidence the United States seeks to admit is far less potentially unfairly prejudicial than other Rule 404(b) evidence that the Ninth Circuit has previously found admissible under Rule 403. See United States v. Hinton, 31 F.3d at 823-24 (prior evidence of brutal physical assaults); United States v. McInnis, 976 F.2d 1226, 1231-32 (9th Cir. 1992) (posters bearing swastikas and highly objectionable racial epithets in criminal civil rights case); United States v. Lewis, 837 F.2d 415, 418 (9th Cir. 1988)(child beating).

In any event, the probative value of the other act by Unger far outweighs the danger of unfair prejudice to the defendant. The previous act displays that Unger had knowledge that the check was counterfeit and uttered it to Money Mart with the intent to deceive, regardless of her claims of innocence. Indeed, if the prior act evidence is damaging, it is precisely because of its probative value in showing the defendant's motive and intent when she is in possession of and uttering a counterfeit check on May 21, 2006, in the same manner as she acted on May 5, 2006. In fact, she used the experience of the prior act to fine-tune her presentation of the second check. See United States v. Simas, 937 F.2d 459, 464 (9th Cir. 1991)("although this testimony may have been damaging, Simas does not indicate how the evidence resulted in unfair prejudice.")(emphasis in original). Any prejudice which may result from the admission of this evidence will be mitigated by the court's limiting instruction. See, Ninth Circuit Model Jury Instruction No. 4.3 (2003); United States v. Bradshaw, 690 F.2d 704 (9th Cir. 1982). Thus, the evidence is proper under Rule 403 as well as under Rule 404(b), and should be admitted.

// //


// //

# CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court enter an order authorizing the United States to admit in its case-in-chief evidence of the proposed other act outlined above.

RESPECTFULLY submitted this 26th day of October, 2006, at Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Retta-Rae Randall
Assistant U.S. Attorney
222 W. 7th Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: rettarae.randall@usdoj.gov

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true and correct copy of the foregoing was served on Andrew J. Lambert on October 26, 2006.

s/ Retta-Rae Randall
Office of the U.S. Attorney