Randall S. Cavanaugh
KALAMARIDES & LAMBERT
711 H Street, Suite 450
Anchorage, AK 9951
P: (907) 276-2135
F: (907- 278-8514
E:  randall@kalamarides.com

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 3:06-cr-00065-RRB-JDR |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OF LAW IN** |
| ) | **SUPPORT OF MOTION TO** |
| VALERIE ROSE UNGER, ) | **MODIFY CONDITIONS** |
| ) | **OF SUPERVISION** |
| Defendant. ) | |
| ) | |

**FACTS**

Ms. Unger-King had a history of being around the wrong people and got into trouble in both state and federal court. While at the half-way house, Ms. Unger met Mr. Robert King. The two fell in love and got married without the permission of their respective probation officers. Mr. King has been named on Ms. Unger's most recently born child's birth certificate. Mr. King is facing supervised release disposition on August 11, 2008.

Ms. Unger-King is hopefully going to Akeela house. The court should alter the order of supervised release in order for Ms. King to have contact with her husband. Ms. King wants her husband part of her treatment plan.

## LAW

The issue at hand the is the intersection of Ms. Unger-King's constitutional right of association and the court's authority to supervise her and give her conditions to abide by the orders of the court.    Ms. Unger-King is currently under conditions of supervision. Ms. Unger-King must follow the conditions set forth in 5D1.3. In 5D1.3(c)(6)(policy statement) it states "the defendant shall not associate with any person convicted of a felony unless granted permission by the probation officer". The court, however, has the authority to allow Ms. Unger-King to have contact with her husband Robert King under 5D1.3(b).

Ms. Unger-King believes the federal case law supports her in her wish to associate with Mr. Robert King under the right of association and privacy as both are guaranteed by the federal constitutions.  The United States Supreme Court recognized a right to intimate association in Roberts v. United States Jaycees, 468 U.S. 609 (1984). In Roberts, the Supreme Court declared that the First Amendment protects "certain kinds of highly personal relationships...from unjustified interference by the State" Roberts at 618. Protected associations "are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to being and maintain affiliation, and seclusion from

others in critical aspects of the relationship". Roberts at 620. The Supreme Court, through its various opinions, has recognized that there exists a continuum of human relationships potentially protected by the freedom of intimate association. Extremely close relationships, such as family relationships and marriage, are generally afforded greater protection from government interference than merely social ones. Weiland v. City of Arnold, 100 F.Supp.2d 984, 987 (E.D. Missouri 2000); See, e.g., Bush v. Dassal-Cokato BD. Of Education, 745 F. Supp. 562, 569 (D. Minn. 1990)(student's desire to associate with peers at a party is not entitled to constitutional protection).

The Supreme Court has also discussed general zones of privacy which emanate from the first, third, fourth, fifth and ninth amendments to constitution. This is often viewed as the 'penumbra of privacy' Griswold v. Connecticut, 381 479, 483 (1965) The right of privacy extends to cases involving personal decisions about marriage and family relationships. Weiland at 988. Ms. Unger-King believes that her decision to marry Mr. Robert King is one that must given special consideration and latitude.

Finally, in Planned Parenthood of Southeastern Pa. V. Casey, 505 U.S. 833 (1992), the Supreme Court reaffirmed the substantive force of liberty protected by the Due Process Clause. The Casey decision confirmed that our laws and tradition afford constitutional protection to personal decisions relating to marriage and family relationships. The court noted "These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and

autonomy, are central to the liberty protected by the Fourteenth Amendment." See Lawrence v. Texas 539 U.S. 558, 574 (2003) As noted in the close of the majority opinion of Lawrence, "It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter". Lawrence at 579. Ms. Unger-King believes her right to marry and associate with a man, even if he is a felon on probation, must be respected by the court in light of the protections to be free from governmental interference as afforded by the United States constitution.

## ARGUMENT

It is likely that the probation officer is going to contest the granting of permission to associate between the two adults. Both have substance abuse issues and are on court supervision. Constitutionally, it is not the place for the Federal Probation Office to dictate whether or not Ms. Unger-King is making a right choice in the area of marriage. The future of Ms. Unger-King's and Mr. Robert King's marriage is one that should not be left to murky speculation, it is perhaps the not in the best interest of Ms. Unger-King, but it is her choice to make. If she is wrong, then she is the one to bear the consequences of her marital decision.

The two adults know they have issues and obligations to the court. They also know that should one or the other relapse, they will have to leave the residence or suffer the consequence of imprisonment. The two consenting adults also know it would take very little for either sovereign, state or federal, to separate the two of them for a technical

violation or the committing of a new substantive offense. This a risk they should be allowed to take. Ms. Unger-King should be allowed to have her conditions of supervision modified to allow her to have contact with Mr. Robert King. If Ms. Unger-King and Mr. King have problems in the future, then the court can re-assess the contact between the two of them.

## **CONCLUSION**

In light of federal case law concerning the right to marriage, this court must issue an order modifying Ms. Unger-King's conditions of supervision allowing her to have contact with her husband, Mr. Robert King.

DATED this 7th day of August, 2008, at Anchorage, Alaska.

By:
KALAMARIDES & LAMBERT
Attorneys for Defendant

/s/ Randall S. Cavanaugh
Randall S. Cavanaugh, ABA #8812215
KALAMARIDES & LAMBERT
711 H Street, Suite 450
Anchorage, AK 9951
P: (907) 276-2135
F: (907- 278-8514
E: randall@kalamarides.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies, pursuant to App. R. 513.5, that the font used in the aforementioned documents was Times New Roman 13 point. I further certify that a true and correct copy of the foregoing was served via **electronic mail** this 7th day of August, 2008, on:

Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, #9, Room 253
Anchorage, AK 99513

Mary Geddes
U.S. Federal Public Defender's Office
601 W. 5th Ave., Ste 800
Anchorage, AK 99501

　　　　/s/ Randall S. Cavanaugh
　　　　Kalamarides & Lambert